# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOSEF K., ET AL.,**<br>Plaintiffs,<br>vs.<br>**CALIFORNIA PHYSICIANS' SERVICE, ET AL.,**<br>Defendants. | CASE NO. 18-cv-06385-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MAXIMUS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 51 |

This is the second round of briefing on the complaint filed by plaintiffs Josef K. and E.K. against defendant Maximus Federal Services, Inc.[1]

The First Amended Complaint ("FAC") alleges three causes of action. (Dkt. No. 46.) First, plaintiffs re-allege breach of the Employee Retirement Income Security Act of 1974 ("ERISA") under 29 U.S.C. section 1132(a)(1)(B), against defendants California Physicians' Service dba Blue Shield of California, Trinet Group, Inc., and Trinet Blue Shield PPO 500 Group #977103 Plan (the "Plan," and collectively, "Blue Shield") on the ground that the treatments at issue were medically necessary. (FAC ¶¶ 68-72.) Second, plaintiffs re-allege a cause of action against Maximus for intentional interference with contract arising out of Maximus' review of Blue Shield's denial of plaintiffs' claim. (FAC ¶¶ 73-94.) Third, plaintiffs allege a new cause of action against Maximus for breach of fiduciary duty pursuant to 29 U.S.C section 1132(a)(3). (FAC ¶¶ 95-109.)

Maximus again moves to dismiss the complaint, arguing that (1) plaintiffs' intentional interference with contract claim is preempted by ERISA, and (2) plaintiffs' breach of fiduciary duty claim must be dismissed because Maximus is not a fiduciary, nor is the requested equitable relief available under the statute. (Dkt. No. 51 ("Motion").) Having carefully considered the

---

[1] Maximus moved to dismiss the complaint on January 3, 2019. (Dkt. No. 26.) The Court granted said motion with leave to amend on February 19, 2019. (Dkt. No. 44.)

pleadings and the arguments in support of and in opposition to the motion, and for the reasons set forth herein, the motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

I. **BACKGROUND**

The FAC alleges as follows:

During the relevant period, plaintiff Josef K. participated in the Plan, an insurance plan that guaranteed coverage for "medically necessary" health care treatments for Plan participants and their beneficiaries. (FAC ¶¶ 7, 12-13.) Under the Plan, mental health claims were administered by Blue Shield and/or a contracted third-party administrator. (*Id.* ¶ 8.)

Plaintiff E.K. is plaintiff Josef K.'s daughter and was a Plan beneficiary. (*Id.* ¶ 11.) The FAC re-states the allegations in the initial complaint regarding E.K.'s difficult medical history. (*Id.* ¶¶ 21-31.) After E.K. received treatment at two mental health treatment programs, plaintiffs filed claims with defendants for mental health benefits under the Plan. (*Id.* ¶¶ 21-31.) The Plan, allegedly by and through Blue Shield and/or its contracted third-party administrator, denied plaintiffs' claims, as well as their subsequent appeal. (*Id.* ¶ 34.) As a final appeal, plaintiffs requested an independent medical review ("IMR") of the claim denials to determine whether E.K.'s treatment was "medically necessary." (*Id.* ¶¶ 37-38.) Maximus was selected to perform the IMR and ultimately concluded that E.K.'s treatment was not medically necessary, upholding Blue Shield's denial of coverage. (*Id.* ¶¶ 39, 57-58.) The outcome of the IMR was non-appealable and binding on Blue Shield. (*Id.* ¶ 41.)

Plaintiffs allege that, pursuant to California Health and Safety Code sections 1374.32 and 1374.33 and California Insurance Code sections 10169.2 and 10169.3, which govern the conduct of IMR organizations, Maximus had a duty to ensure that the professionals retained to review E.K.'s claim were "appropriately credentialed and privileged," and "qualified to render recommendations." (*Id.* ¶¶ 79-81, 84, 87.) Plaintiffs further allege that Maximus had a duty under these provisions of state law to "consider E.K.'s specific medical needs" and "make a reasonable effort to obtain and review all pertinent medical records." (*Id.* ¶¶ 84, 87.) The FAC alleges that Maximus breached its duties under the state statutes by performing a biased and incomplete review of E.K.'s claim. (*Id.* ¶¶ 65, 85.) Specifically, the FAC details Maximus' alleged failure to

2

address facts and materials provided by E.K.'s parents and treatment providers, and its alleged mischaracterization of E.K.'s condition and medical history in its final written report. (*Id*. ¶¶ 59-64.) Plaintiffs allege that but for Maximus' insufficient review, and consequently, its determination to uphold the claim denial, Blue Shield would have covered E.K.'s treatment. (*Id*. ¶ 65.)

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal for failure to state a claim under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed. *Id*. at 678-79; *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (stating that a court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

## III. DISCUSSION

### A. Intentional Interference with Contract

In the FAC, plaintiffs re-assert their claim against Maximus for intentional interference with contract. This time, according to plaintiffs, the interference with contract claim is "grounded upon" Maximus' alleged violations of California Health and Safety Code sections 1374.32 and 1374.33 and California Insurance Code sections 10169.2 and 10169.3, which govern the conduct of IMR organizations. (Dkt. No. 52 ("Opp."), at 10.)

As this Court noted in its prior order granting Maximus' motion to dismiss, ERISA, which
3

comprehensively regulates employee welfare benefit plans, includes two preemption doctrines that may overcome state law claims for relief. *See Fossen v. Blue Cross & Blue Shield of Mon., Inc.*, 660 F.3d 1102, 1107 (9th Cir. 2011). The Court must therefore consider, once again, whether plaintiffs' interference with contract claim is defeated by one of ERISA's two preemption doctrines: (1) conflict preemption under 29 U.S.C. section 1144(a), or (2) complete preemption under 29 U.S.C. section 1132(a). The Court considers each doctrine in turn.

### 1. *Conflict Preemption*

Under the doctrine of conflict preemption, ERISA supersedes state laws "insofar as they may now or hereafter relate to any employee benefit plan" described in the ERISA statute. 29 U.S.C. § 1144(a); *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009) (question of whether a law or claim "relates to" an ERISA plan is the appropriate test for conflict preemption). A state law claim "relates to" an ERISA plan if it has either a "reference to" or "connection with" such a plan. *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1081-82 (9th Cir. 2009) (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990)). "Stated another way, where 'the existence of [an ERISA] plan is a critical factor in establishing liability' under a state cause of action, the state law claim is preempted." *Wise v. Verizon Communications, Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010) (alteration in original) (citing *Ingersoll-Rand Co.*, 498 U.S. at 136, 139-40).

In its prior order, this Court found that plaintiffs' interference with contract claim was preempted because it was "inextricably tied to the denial of benefits under the ERISA plan," which was the basis for plaintiffs' ERISA claim against Blue Shield. (Dkt. No. 44, at 4.) Plaintiffs argued that the claim was unrelated to ERISA because it was grounded in alleged violations of California Health and Safety Code section 1374.72 and California Insurance Code section 10169.2, notwithstanding that the complaint did not even mention these state laws. The Court rejected this argument, finding that the existence of plaintiffs' ERISA plan was a "critical factor in establishing liability" under the interference of contract claim, and thus, the claim was preempted. (*Id.*, at 5 (quoting *Wise*, 600 F.3d at 1190).)

The FAC adds several allegations in support of plaintiffs' interference with contract claim.

4

Most notably, the FAC alleges that Maximus breached its duties under the California Health and Safety Code and California Insurance Code by performing a biased and incomplete review of E.K.'s claim, which ultimately interfered with Blue Shield's contractual obligations to plaintiffs. (FAC ¶¶ 79-81, 84, 87.) Plaintiffs assert that their interference with contract claim is "grounded upon" these state laws, which do not "act immediately or exclusively on ERISA plans," and to which "the existence of an ERISA Plan is not essential." (Opp., at 10.) Thus, plaintiffs argue, their interference with contract claim does not "relate to" ERISA and is not preempted. (*Id.*) Maximus counters that the interference with contract claim in the FAC suffers from the same deficiencies as it did in the initial complaint, and therefore is similarly preempted. (Motion, at 8-9.)

The Court finds plaintiffs' interference with contract claim remains intertwined with defendants' denial of benefits under plaintiffs' ERISA plan. "[A] state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll-Rand*, 498 U.S. at 139 (citing *Pilot Life v. Dedeaux*, 481 U.S. 41, 47 (1987)); *see also Bast v. Prudential*, 150 F.3d 1003, 1007 (9th Cir. 1998) (ERISA "preempts state common law tort and contract causes of action asserting improper processing of a claim for benefits under an insured employee benefit plan"). Here, the new allegations in the FAC do not change the gravamen of plaintiffs' interference with contract claim, which is based on Maximus upholding Blue Shield's denial of coverage as to the Plan. Specifically, the FAC alleges that Maximus' "improper, inaccurate, and incomplete review *of [the] claim denial*, and its issuance of a written report ***upholding said denial***, ***prevented and interfered with Blue Shield's contractual obligation*** to provide medically necessary treatment and care to E.K." (FAC ¶ 90, emphasis supplied.) Plaintiffs further allege that Maximus, in conducting an IMR as to E.K.'s claim denial, "had full and complete knowledge of the contract between TriNet and Blue Shield, and of [p]laintiffs' status as the intended beneficiaries of said contract." (*Id.* ¶ 75.) By performing an IMR, Maximus determined whether services were medically necessary and thus whether plaintiffs were entitled to coverage under the Plan. (*Id.* ¶¶ 3, 43.) Insofar as plaintiffs' interference with contract claim is "grounded upon" alleged violations of state law, the FAC

5

alleges that Maximus violated these state laws in the course of its review of ***plaintiffs' ERISA plan***. (*Id.* ¶¶ 90-91.)[2] In sum, the allegations demonstrate that but for the existence of E.K.'s ERISA plan, plaintiffs would not have suffered the harm alleged with respect to the interference with contract claim. *See Groves v. Kaiser Found. Health Plan Inc.*, 32 F. Supp. 3d 1074, 1087 (N.D. Cal. 2014) (negligence claims were preempted where they "relate[d] to" an ERISA plan "in some sense"). Thus, plaintiffs' interference with contract claim is preempted by ERISA under the conflict preemption doctrine.

### 2. Complete Preemption

Next, the Court analyzes whether plaintiffs' interference with contract claim is completely preempted by ERISA. A state law cause of action is completely preempted if: (1) the plaintiff, "at some point in time, could have brought [the] claim under ERISA § 502(a)(1)(B)," and (2) "there is no other independent legal duty that is implicated by [the] defendant's actions." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). The test is conjunctive, and both elements need to be met to show complete preemption. *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1059 (9th Cir. 2018).

In its prior order granting Maximus' motion to dismiss, this Court found both prongs of the *Davila* test were satisfied. (Dkt. No. 44, at 6.) The Court held that the first prong of the test was satisfied on the grounds that the complaint already alleged a cause of action under 29 U.S.C. section 1132(a)(1)(B) against Blue Shield, and the interference with contract claim against Maximus likewise could have fallen under the scope of ERISA. (*Id.*) The Court further held that the second prong of the test was satisfied because the complaint stated no independent legal duty. (*Id.*) Specifically, we noted that the state laws on which plaintiffs purported to base their interference with contract claim did not appear in the complaint, and in any event, Maximus' actions, as pleaded, were intertwined with the denial of benefits. (*Id.*)

---

[2] Plaintiffs also assert that their interference with contract claim does not bear on an ERISA-regulated relationship because California Health and Safety Code section 1374.32(c) requires an IMR organization to be independent of and unrelated to any party to an insurance contract for which it is performing services. (Opp., at 11.) Plaintiffs' argument does not persuade. Even assuming Maximus acted independently from Blue Shield when conducting the IMR—a fact which plaintiffs themselves appear to dispute (FAC ¶ 85)—that does not alter that the IMR was related to Blue Shield's coverage of E.K.'s treatment under the Plan.

6

As to the first prong of *Davila*, the Court analyzes whether, based on the allegations in the FAC, plaintiffs could have brought the interference with contract claim under 29 U.S.C. section 1132(a)(1)(B). *Davila*, 542 U.S. at 210. Maximus argues that nothing of consequence has changed from plaintiffs' initial complaint. (Motion, at 9.) Plaintiffs counter that the first prong of *Davila* is not satisfied because the interference with contract claim, which they argue is now "grounded upon" violations of the California Health and Safety Code and California Insurance Code, cannot be repleaded against Maximus as an ERISA cause of action. (Opp., at 10.)

Plaintiffs' argument fails to persuade. In the FAC, plaintiffs again bring a cause of action against Blue Shield for violations of 29 U.S.C. section 1132(a)(1)(B) in connection with the plaintiffs' claim denial. (FAC ¶¶ 68-72.) Plaintiffs' interference with contract claim is premised on Maximus' upholding of that denial, and thus, falls within the scope of a claim brought under 29 U.S.C. section 1132(a)(1)(B). (*See id.* ¶¶ 91-92.) Plaintiffs' new allegations related to the duties imposed on IMR organizations by various state laws do not compel a different conclusion. "[T]he mere fact that the state cause of action attempts to authorize remedies beyond those authorized by ERISA [section] 502(a) [does not] put the cause of action outside the scope of the ERISA civil enforcement mechanism." *Davila*, 542 U.S. at 214-15. Thus, the first prong of the *Davila* test is satisfied.[3]

Next, the Court turns to the second prong of *Davila*, i.e., whether the claim implicates any other independent legal duty from those imposed under ERISA. *Davila*, 542 U.S. at 210. Maximus argues that the interference with contract claim continues to be contingent on Blue Shield's denial of coverage, and thus, does not implicate a legal duty independent of those imposed by ERISA. (Motion, at 9.) Plaintiffs dispute this characterization of their claim, arguing that the FAC alleges that Maximus violated independent duties, namely, duties imposed by the

---

[3] Plaintiffs point to Maximus' argument that it is not a proper ERISA defendant, which is discussed below, to argue that the interference with contract claim could not be brought as an ERISA action against Maximus. (Opp., at 2.) As set forth below, the Court finds that Maximus is a proper ERISA defendant, further undermining plaintiffs' argument that an ERISA claim could not be brought against Maximus.

7

California Health and Safety Code and California Insurance Code, which set forth quality and care standards for IMR organizations. (Opp., at 12-13.)

In support of this proposition, plaintiffs rely on *Hansen v. Group Health Cooperative*, 902 F.3d 1051 (9th Cir. 2018). There, mental health providers who were assigned benefits by patients with ERISA plans filed suit against an insurance company alleging violations of the Washington Consumer Protection Act. *Id*. at 1055. The providers alleged, among other things, that the insurer deceptively used its internal treatment guidelines to avoid paying for mental healthcare coverage required under Washington's Mental Health Parity Act. *Id*. In analyzing the case under the second prong of *Davila*, the Ninth Circuit rejected the argument that assessing whether the insurer violated its duty under the mental health parity law would require the court to interpret the ERISA plan. *Id*. at 1060. The court found that the statutory duty "exist[ed] apart from [the] plan's defined terms, even if [the] plan happen[ed] to use the same language." *Id*. Thus, the court held that the second prong of *Davila* was unmet and ordered the district court to remand the case back to state court. *Id*. at 1059-61.

The Court agrees that *Hansen* is instructive. Here, plaintiffs' interference with contract claim, as pleaded, rests on allegations that Maximus violated its duties under the California Health and Safety Code and California Insurance Code, which in turn interfered with Blue Shield's contractual obligation to provide coverage. (*See* FAC ¶¶ 79-90.) Although these statutory duties rely on the existence of the Plan, "[t]he relevant inquiry [] focuses on the *origin* of the duty, not its relationship with health plans." *Hansen*, 902 F.3d at 1060. Moreover, the statutory duties exist independently of any requirements imposed by the Plan. Said another way, the Court theoretically could determine whether Maximus violated its duties under the state statutes without interpreting the term "medical necessity" as used in the Plan.[4]

As such, the Court finds that the second prong of *Davila* is not satisfied, and thus, plaintiffs' interference with contract claim is not completely preempted. However, because the

---

[4] It makes no difference that plaintiffs' interference with contract claim is a common law tort cause of action. In *Hansen*, the plaintiffs alleged a violation of the Washington Consumer Protection Act. What was relevant for purposes of the *Davila* analysis was that the claim was premised on a violation of the mental health parity law. The same is true here.

8

claim is subject to conflict preemption, dismissal of plaintiffs' interference with contract claim is warranted.[5]

**B.     Breach of Fiduciary Duty Under 29 U.S.C § 1132(a)(3)[6]**

In addition to re-pleading a claim for interference with contract, plaintiffs allege a new cause of action against Maximus for breach of fiduciary duty pursuant to 29 U.S.C. section 1132(a)(3). (FAC ¶¶ 95-109.) As to this cause of action, plaintiffs seek equitable and remedial relief, including a requirement that Maximus make certain modifications to its IMR process, as well as surcharge. (*Id*. ¶¶ 108, 118-120.)

Maximus moves to dismiss plaintiffs' fiduciary duty claim on two grounds. First, as a threshold matter, the Court considers whether Maximus qualifies as a "fiduciary" under ERISA. Then, the Court determines whether the relief plaintiffs seek is available under the statute.

*1.     Maximus' Status as a Fiduciary*

First, the Court considers whether the FAC alleges sufficient facts to show that Maximus was a "fiduciary" as defined by ERISA. "Named" fiduciaries are those vested by the language of a benefit plan with the "authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). A party not named in a plan becomes a fiduciary if:

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any control respecting management or disposition of its assets,
> (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or
> (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Such non-named fiduciaries are sometimes referred to as "functional" fiduciaries. *Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 837 (9th Cir. 2018).

---

[5] Maximus' motion briefly addresses ERISA's savings clause, under which a state law that ordinarily would be preempted by ERISA may be "saved" from preemption if it regulates insurance. 29 U.S.C. § 1144(b)(2)(A). Plaintiffs do not assert that the savings clause applies. Accordingly, the Court does not consider the savings clause in its preemption analysis.

[6] In the FAC, plaintiffs allege that they are entitled to "injunctive and other equitable relief" pursuant to sections 1132(a)(2) and 1132(a)(3). At the hearing on this motion, plaintiffs' counsel clarified that plaintiffs are not seeking relief under section 1132(a)(2) in this case. Accordingly, the Court does not address that issue.

9

Whether named or functional, an ERISA fiduciary owes various duties of loyalty and care when conducting business on behalf of a plan. *Id.*

Both the U.S. Supreme Court and the Ninth Circuit have suggested that fiduciary status under ERISA is to be construed liberally, consistent with ERISA's policies and objectives. *See John Hancock Mut. Life Ins. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 96 (1993) ("Congress commodiously imposed fiduciary standards on persons whose actions affect the amount of benefits retirement plan participants will receive."); *Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.*, 809 F.2d 617, 625 (9th Cir. 1987) (finding that 29 U.S.C. section 1002(21) sets forth a "broad definition" of fiduciary). Indeed, ERISA defines "fiduciary" "not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan." *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 262 (1993) (emphasis in original). Thus, although fiduciary status does not attach to a party who "merely perform[s] ministerial duties or processes claims," a party may qualify as a fiduciary "if it has the authority to grant, deny, or review denied claims." *Kyle Railways, Inc. v. Pac. Admin. Servs., Inc.*, 990 F.2d 513, 516-518 (9th Cir. 1993). The central inquiry when determining whether a party is a functional fiduciary is whether it was acting as an ERISA fiduciary "when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

Plaintiffs concede that Maximus is not a named fiduciary but argue that Maximus is nevertheless liable for breaching its duties as a functional fiduciary. (Opp., at 4.) Specifically, plaintiffs argue that Maximus acted as a functional fiduciary when reviewing the claim denial at issue because Maximus exercised discretionary authority and control over the disposition of Plan assets to plaintiffs. (*Id.*, at 5-6) Maximus counters that it did not act as a fiduciary when it reviewed Blue Shield's denial of coverage as to E.K. (Motion, at 10.) Maximus contends that it was only responsible for providing an external review of a "discrete issue," namely, whether E.K.'s treatments were medically necessary based on generally accepted standards of care. (*Id.*, at 11.) Maximus further argues that there are no factual allegations in the complaint that give rise to a reasonable inference that Maximus was a "claims administrator" or "ha[d] discretion over the assets of Josef K's plan, such as paying plan benefits, managing plan assets, or providing

investment advice to the plan, as courts have found functional fiduciaries to do." (*Id.*)

*Del Prete v. Magellan Behavioral Health, Inc.*, 112 F. Supp. 3d 942 (N.D. Cal. 2015) is also instructive. There, plaintiff brought an ERISA claim against his plan, plan administrator, claims administrator, and independent medical reviewer, after he was denied benefits for substance abuse treatment. *Id.* at 943-44. With respect to the independent medical reviewer, the court identified allegations in the complaint indicating the defendant had significant discretion in issuing determinations on disputed claims, its determinations involved plan interpretation and judgment, and its decisions were final and binding. *Id.* at 947. The court concluded that the complaint alleged sufficient facts to establish that the independent medical reviewer was an ERISA fiduciary, noting that "[a] person with the authority to grant or deny claims, or to review the denial of claims, for benefits under [an] ERISA plan is a fiduciary." *Id.* (quoting *Hecht v. Summerlin Life & Health Ins. Co.,* 536 F.Supp.2d 1236, 1243 (D. Nev. 2008)).

The FAC contains similar allegations as to Maximus that the *Del Prete* court found sufficient to bestow fiduciary status on the independent medical reviewer in that case. Specifically, plaintiffs plead numerous facts regarding Maximus' discretion over its review of the denied claims. (FAC ¶¶ 40-46.) The FAC alleges that the Plan guaranteed coverage for medically necessary treatment but did not define "medical necessity." (*Id.* ¶¶ 13, 15.) Plaintiffs further allege that after their claim was denied, Blue Shield contended that "medically necessary treatment" was defined in its "evidence of coverage" as treatment that "had been established as safe and effective," was "furnished under generally accepted professional standards," and was determined by Blue Shield to be "[c]onsistent with Blue Shield of California medical policy," "[c]onsistent with the symptoms and diagnosis," "[f]urnished at the most appropriate level," and not "furnished primarily for [] convenience." (*Id.* ¶ 17.) A reasonable reading of these allegations is that Maximus exercised significant discretion in reaching its determination regarding medical necessity, including in construing terms like "safe," "effective," and "appropriate." Indeed, plaintiffs allege that Maximus "had the authority to interpret level of care guidelines and apply a definition of Medical Necessity" in reaching its conclusions. (*Id.* ¶¶ 44-45.)

Maximus' attempt to downplay its role in the decision to deny coverage to plaintiffs fails

11

to persuade. By providing that Maximus' decision would be "binding on Blue Shield," the Plan bestowed Maximus with *final authority* over whether E.K.'s claim would be paid or not. (*Id*. ¶ 41.) If Maximus determined the treatment was "medically necessary," Blue Shield would have "promptly arrange[d] for the Service to be provided or the claim in dispute to be paid." (*Id*.) If not, as was the case here, Blue Shield's denial of the claim would be upheld. (*Id*. ¶ 43.) Such allegations indicate that Maximus exercised at least some control over the disposition of the Plan's assets to cover E.K.'s treatment, which is plausibly sufficient to establish functional fiduciary status. 29 U.S.C. § 1002(21)(A) (one who "exercises any control respecting management or disposition of [a plan's] assets" may be a functionary fiduciary); *see also IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1420 (9th Cir. 1997) ("A plan employee whose sole function is to calculate the amount of benefits to which each plan participant is entitled in accordance with a mathematical formula, does not thereby become a fiduciary. But a plan employee who has the final authority to authorize or disallow benefit payments in cases where a dispute exists is a fiduciary.") (quotations and citations omitted); *Pacificare Inc. v. Martin,* 34 F.3d 834, 837-38 (9th Cir. 1994) (insurer that had discretion to approve or deny claims was a fiduciary for purposes of ERISA).

Maximus' reliance on *Harlick v. Blue Shield of California*, 686 F.3d 699 (9th Cir. 2012) is also unavailing. The issue before the court in *Harlick* was whether an insurer was required to pay for a patient's care at a residential treatment facility, either under the terms of her insurance plan or under the California Mental Health Parity Act. *Id*. at 699. On appeal, the insurer argued that the California Department of Managed Health Care ("DMHC") had taken the position that the mental health parity law did not require coverage, pointing the fact that the DMHC had conducted an IMR of the patient's complaint and agreed with the claim denial. *Id*. at 716. The Ninth Circuit rejected this argument, noting that the DMHC's review of the patient's complaint "deal[t] solely with the question [of] whether treatment was medically necessary for a particular patient," not whether coverage was required under the mental health parity law. *Id*. at 718-19. The court did not, however, consider the issue raised in the instant motion, namely, whether Maximus acted as a fiduciary when performing the IMR. *Harlick* therefore does not directly bear on the question at

12

hand.

Moreover, the facts in *Harlick* are distinguishable from the facts in this case, as pleaded in the FAC. In *Harlick*, the insurer represented to the patient, in writing, that its denial of coverage "was the final decision in [the patient]'s administrative appeal." *Id*. at 706. Thereafter, the patient's mother filed a complaint with the California Insurance Commissioner, which was forwarded to the DMHC, which performed the IMR *Id*. Here, in contrast, plaintiffs allege that the Plan expressly provides for an IMR and states that Maximus' decision is binding on Blue Shield. (FAC ¶ 41.) These allegations are sufficient for purposes of claiming that Maximus is a fiduciary under ERISA.[7]

### 2. *Availability of Relief*

In light of the Court's conclusion that the FAC sufficiently alleges Maximus acted as an ERISA fiduciary when reviewing the plaintiffs' claim denial, the Court next turns to the question of whether the relief sought by plaintiffs is available under 29 U.S.C. section 1132(a)(3).[8] Under 29 U.S.C. section 1132(a)(3), a plan participant or beneficiary may file suit "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). This section has been characterized as a "catchall" provision, and normally is invoked by a plaintiff where relief is not provided elsewhere in the statute. *See Varity Corp. v. Howe,* 516 U.S. 489, 512 (1996). In determining whether an action for equitable relief is properly brought under ERISA, the Court must "look to the substance of the remedy sought . . . rather than the label placed on that remedy."

---

[7] Because this Court finds that the FAC sufficiently alleges Maximus was a functional fiduciary, it need not consider plaintiffs' alternative claim that Maximus was a "de facto" plan administrator.

[8] To recover under section 1132(a)(3), a plaintiff must "prove both (1) that there is a remediable wrong, *i.e.*, that the plaintiff seeks relief to redress a violation of ERISA or the terms of a plan, . . . and (2) that the relief sought is 'appropriate equitable relief.'" *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 954 (9th Cir. 2014) (quoting 29 U.S.C. § 1132(a)(3)(B)). In its motion to dismiss, Maximus does not appear to challenge whether plaintiffs have alleged a remediable wrong besides arguing that Maximus is not a "fiduciary," which is addressed herein.

13

*Watkins v. Westinghouse Hanford Co.,* 12 F.3d 1517, 1528 n.5 (9th Cir. 1993) (citing *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 255 (1993)).

Besides attorneys' fees and costs, which are not at issue in the present motion, plaintiffs seek two forms of relief pursuant to 29 U.S.C. section 1132(a)(3). (FAC ¶¶ 118-20.) First, plaintiffs seek "equitable or remedial relief as the court may deem appropriate," including but not limited to requirements that Maximus make specific modifications to its IMR process. (*Id.* ¶ 118.) The proposed modifications include requirements that Maximus "identify and provide the text of the guidelines used to reach its determinations in its denial letters," "make reasonable efforts to obtain the input of treating providers" and "plan enrollee[s]," and "obtain and review the complete administrative record." (*Id.*) Second, plaintiffs seek surcharge. (*Id.* ¶ 120.)

As to plaintiffs' request for modifications to Maximus' review process, Maximus argues such relief would amount to an improper re-writing of the California law regarding IMR organizations. (Reply, at 4.) Plaintiffs' opposition states that they are entitled to this "plan-wide" relief under section 1132(a)(2), but given plaintiffs' counsel's representation that plaintiffs no longer seek relief under section 1132(a)(2), this argument is moot. Insofar as plaintiffs also seek this form of relief under section 1132(a)(3), the Court finds such relief is not available based on the facts alleged in the FAC. In particular, the FAC is devoid of allegations regarding Maximus' review process generally, or how Maximus' conduct may have injured the Plan or all Plan participants. Rather, the FAC states that plaintiffs bring this action "for the purpose of recovering benefits under the terms of an employee benefit plan, and enforcing ***Plaintiffs' rights*** under the terms of an employee benefit plan." (FAC ¶ 2, emphasis supplied.) Plaintiffs allege that Maximus breached its fiduciary duties when reviewing E.K.'s claim only, which caused harm to plaintiffs specifically. (*Id.* ¶¶ 59-64, 101-104, 106.) These allegations are insufficient to support a claim for plan-wide relief that plaintiffs admit "is not limited to E.K.'s claim for benefits." (Opp., at 8.)[9]

---

[9] Plaintiffs liken this case to those in which courts have found that plan reformation, in the form of rewriting or modifying a benefits plan, is an available remedy under section 1132(a)(3). *See, e.g., CIGNA Corp. v. Amara,* 563 U.S. 421, 441-42 (2011); *Moyle v. Liberty Mut. Retirement Ben. Plan,* 823 F.3d 948, 960 (9th Cir. 2016). However, plan reformation "is proper only in cases of fraud and mistake." *Skinner v. Northrop Grumman Ret. Plan B,* 673 F.3d 1162, 1166 (9th Cir. 2012). There are no allegations of fraud or mistake evident in the FAC.

14

With respect to the request for surcharge relief, the U.S. Supreme Court has expressly held that surcharge is an available equitable remedy under section 1132(a)(3). *See CIGNA Corp. v. Amara*, 563 U.S. 421, 457 (2011). This surcharge relief may appropriately compensate plaintiffs for loss resulting from a fiduciary's breach of duty or prevent a fiduciary's unjust enrichment. *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 957 (9th Cir. 2014). That a surcharge takes the form of monetary compensation does not remove it from the scope of appropriate equitable relief. *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 960 (9th Cir. 2016) ("[R]emedies such as . . . surcharge . . . are traditionally equitable remedies, and the fact that they take a monetary form does not alter this classification.").

Maximus argues that plaintiffs cannot pursue surcharge, and in particular, disgorgement of profits, because such relief would not redress any harm suffered by plaintiffs specifically. (Reply, at 5.) In the FAC, however, plaintiffs assert that they are entitled to surcharge at least in part because Maximus' breach of its fiduciary duties caused ***plaintiffs*** to incur various costs, including costs incurred in connection with the investigation of E.K.'s benefits claim. (FAC ¶ 107.) Moreover, in their opposition, plaintiffs contend they are entitled to disgorgement of profits generated by Maximus from performing IMRs. (Opp., at 8-9.) The availability of any ***individualized*** disgorgement of profits, relating to revenue earned by Maximus in the course of reviewing E.K.'s claim denial only, depends on how Maximus was compensated for performing this IMR. The factual record is not sufficiently developed for the Court to undertake this analysis at this time. However, based on the facts as pleaded in the FAC, the Court finds that plaintiffs have pleaded a plausible entitlement to surcharge relief.[10]

Maximus further argues that plaintiffs are not entitled to surcharge because it would be "superfluous of the requested relief against Blue Shield in [p]laintiffs' first claim under section

---

[10] Maximus' argument that disgorgement is only available against trustees does not persuade. (Reply, 5.) In support of this proposition, Maximus relies on *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945 (9th Cir. 2014). In *Gabriel*, however, the Ninth Circuit found that the district court had not considered whether surcharge was an available equitable remedy under the circumstances of that case, and accordingly, remanded the case back to the district court to determine the availability of surcharge. *Id*. Thus, *Gabriel* did not, as Maximus suggests, stand for the proposition that surcharge is never available in an ERISA suit against a non-trustee.

[1132(a)(1)(B)]." (Opp., at 12.)[11] According to Maximus, plaintiffs have brought this case to recover benefits and enforce their rights under the Plan, which implicates Blue Shield alone. (*Id.* at 13.)

The Court disagrees. Plaintiffs have stated a plausible claim that Maximus breached its duty as a plan fiduciary, and thus, it is appropriate for plaintiffs to seek relief against Maximus in addition to Blue Shield. An award of benefits under section 1132(a)(1)(B) does not account for other financial harm that plaintiffs may have suffered in pursuing an IMR, nor does it account for potential unjust enrichment. Moreover, should Blue Shield be dismissed from this this case, plaintiffs remain entitled to pursue relief against Maximus as a fiduciary. Thus, at the pleading stage, the Court is unable to conclude that plaintiffs' request for surcharge relief under section 1132(a)(3) is merely "superfluous." *See Braun v. USAA Grp. Disability Income*, 2014 WL 3339795, at *3 (D. Ariz. July 8, 2014) ("It is conceivable that Plaintiff could prove that she is entitled to an award of past and future benefits under [section] 1132(a)(1)(B) and additional monetary damages under [section] 1132(a)(3) for breach of fiduciary duty."); *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 727 (8th Cir. 2014) ("At the motion to dismiss stage, [] it is difficult for a court to discern the intricacies of the plaintiff's claims to determine . . . if one or both [of sections 1132(a)(1)(B) and 1132(a)(3)] could provide adequate relief.")

The U.S. Supreme Court has held that "ERISA's basic purposes favor a reading . . . that provides the plaintiffs with a remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 513 (1996). In accordance with this guidance, and in light of the findings above, the Court will not foreclose plaintiffs' entitlement to relief against Maximus at this juncture.[12] Accordingly, plaintiffs may

---

[11] In its reply, Maximus clarifies that it "does not dispute that [p]laintiffs may plead a section [1132](A)(3) claim in the alternative to its section [1132](a)(1)(B) claim against Blue Shield." For the avoidance of doubt, the Court notes that this proposition is well-established under Ninth Circuit case law. *See Moyle*, 823 F.3d at 960 (finding that pleading alternative theories of liability under sections 1132(a)(1)(B) and 1132(a)(3) comports with U.S. Supreme Court precedent, as well as the Federal Rules of Civil Procedure).

[12] Maximus argues, for the first time in its reply, that plaintiffs are not entitled to surcharge relief under section 1132(a)(3) because they have not alleged detrimental reliance or deprivation of an ERISA right. (Reply, at 5.) To obtain surcharge relief for a breach of fiduciary duty, however, "'a plan participant or beneficiary must show that the violation injured him or her,'

16

proceed with their section 1132(a)(3) claim.

**C. Leave to Amend**

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires." *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 701 (9th Cir. 2011). Where amendment would be futile, however, the Court need not grant leave. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Smith v. Pac. Props. & Dev. Corp.,* 358 F.3d 1097, 1101 (9th Cir. 2004). Here, plaintiffs were previously granted leave to amend after the Court found plaintiffs' interference with contract claim was preempted by ERISA. (Dkt. No. 26.) Although plaintiffs' have stated a cognizable claim against Maximus under ERISA, their interference with contract claim still is preempted. Plaintiffs have pointed to no other facts or theories warranting leave to amend. Thus, the Court finds that granting such leave would be futile.

**IV. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Maximus' motion to dismiss **WITH PREJUDICE** as to plaintiffs' claim for intentional interference with contract. The Court **DENIES** Maximus' motion to dismiss as to plaintiffs' claims for breach of fiduciary duty under 29 U.S.C. section 1132(a)(3). Maximus shall respond to such claim within **fourteen (14) days** of this order. Further, a Case Management Conference shall be set for **Monday, July 15, 2019** at **2:00 p.m.** in the Federal Building, 1301 Clay Street, Oakland in Courtroom 1.

This Order terminates Docket Number 51.

**IT IS SO ORDERED.**

Dated: June 3, 2019

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

but 'need only show harm and causation,' not detrimental reliance." *Moyle*, 823 F.3d at 957-58 (quoting *CIGNA Corp. v. Amara*, 563 U.S. 421, 444 (2011)). Moreover, plaintiffs have alleged deprivation of an ERISA right as a result of Maximus conducting a biased and incomplete review of E.K.'s claim, which is sufficient at the pleading stage.

17